UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 07-40053 |
| TERRANCE LAVELL KATZ, ) | |
| ) | |
| Defendant, ) | |
| ) | |

## ORDER

Before the Court is Defendant Terrance Katz's Motion to Suppress Statements. For the reasons set forth below, the Motion to Suppress Statements is GRANTED.

### BACKGROUND

The material facts at issue are largely undisputed.

Katz was arrested on February 15, 2007, and charged in state court with Felon in Possession of a Firearm. Following his arrest, Katz was taken to the Rock Island Police Department. Soon after his arrival at the police department, Katz was escorted to an interview room. Waiting for him in the interview room were Rock Island Police Detective Karzin and ATF Agent Pessman. Tr. at 5. Detective Karzin had completed a Miranda rights form so that he was ready to inform Katz of his rights. Tr. at 5. As Katz entered the interview area and saw who was waiting for him, he said he did not want to talk to them. Tr. at 5. Detective Karzin immediately replied that they "just wanted to speak with him about what was going on, advise him what was happening, and [ask] him to

hear us out." Tr. at 5. Katz responded, "I'm not going to talk to them. I've got nothing to say." Tr. at 6. Detective Karzin continued by saying that they wanted to talk to Katz, asked Katz to hear them out, and explained that "it might be in his best interest just to listen." Tr. at 6. Again, Katz responded, "I've got nothing to say." Tr. at 6.

At that point, ATF Agent Pessman explained to Katz that the current state charges "could possibly go federal and that he may want to hear what we have to say and make a decision later or make a decision as to whether he wanted to speak with us." Tr. at 6-7. During Agent Pessman's statement, mention was made of fifteen years imprisonment for the federal charge, but Detective Karzin does not recall if Agent Pessman said that the possible penalties might be fifteen to life. Tr. at 16. Agent Pessman also discussed the federal sentencing guidelines, and that a federal prosecution would carry greater penalties than a state prosecution. Tr. at 23. It is possible that Agent Pessman advised Katz that this was his opportunity to cooperate and assist the Government in giving information. Tr. at 21. Armed with the information regarding possible penalties if the case went federal, Katz responded with the remarkable claim that he "could do fifteen years sitting on his dick." Tr. at 20. And, for a fourth time, Katz stated that he did not wish to speak. Tr. at 7.

At that point, Detective Karzin felt there was no hope that Katz would decide to talk to them. He correctly advised Katz that he was being charged in state court with Felon in Possession of Firearm, that his bond would be $75,000, ten percent to apply. Tr. at 7. Katz responded by saying that he did not care because he did not have a gun. Tr. at 7. Detective Karzin then explained that "we were in the process of fingerprinting, asking that the gun be fingerprinted for latent prints, and at which point Katz stated that

2

there weren't any fingerprints on the gun." Tr. at 7-8. Detective Karzin also explained that latent fingerprints can remain when a bullet is placed in the cylinder even if the gun is wiped down. Tr. at 8. Katz's brilliant response to that information was "I used gloves." Tr. at 19.

Detective Karzin testified that, after Katz informed them that he did not want to talk, the detective continued the conversation because he hoped Katz would change his mind and talk to the investigators. Tr. at 22

## DISCUSSION

In *Michigan v. Mosely*, 423 U.S. 96, 96 S. Ct. 321 (1975), the Supreme Court held that:

> A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt "fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . . ." The critical safeguard identified in the passage at issue is a person's "right to cut off questioning." . . . We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Id.* at 103-04 (*quoting Miranda v. Arizona*, 384 U.S. 436, 474, 479, 86 S. Ct. 1602 (1966)).

In the present case, Katz invoked his right to silence four times in the span of a few minutes. Nevertheless, the detectives continued their discussion with Katz. In this Court's opinion, considering the number of times that Katz refused to answer their questions and the short period of uninterrupted time over which he invoked his right to silence, Katz's invocation of his right to silence was not "scrupulously honored."

In *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682 (1980), the Supreme Court further defined the application of *Miranda*:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.

*Id.* at 300-01, 100 S. Ct. 1682.

Considering the testimony in the present case, it is undisputed that Detective Karzin and Agent Pessman did not provide the *Miranda* warnings to Katz. Although Detective Karzin was ready, willing, and able to advise Katz, before Detective Karzin was able to read the warnings, Katz first stated that he did not wish to talk.

The Government relies heavily on *Easley v. Frey*, 433 F.3d 969 (7th Cir. 2006), to support its position, and *Easley* complicates this Court's decision. The *Easley* court suggested that an investigator's "intent to elicit a response from Easley may suggest that the statement could be a form of interrogation, but his intent is not dispositive." *Id.* at 973. The *Easley* court also suggested that a statement can be a form of interrogation if it is "reasonably likely to elicit an incriminating response." *Id.* However, the *Easley* court held that a criminal defendant can prevail on a motion to suppress only if "he was subjected to 'compelling influences, psychological ploys, or direct questioning.'" *Id.* at 974 (*quoting Arizona v. Mauro*, 481 U.S. 520, 529, 107 S. Ct. 1931 (1987)). The court held that statements by law enforcement officials regarding the nature of evidence against the suspect do not constitute interrogation as a matter of law. *Id.* at 974. The

court also held that "the provision of information, even if its weight might move a suspect to speak," does not amount to "an impermissible psychological ploy." *Id.* Because the defendant could not establish that the statement was more than a communication about the evidence against him and the possible penalties he faced, the court held that the incriminating statements should not be suppressed. *Id.*

However, *Easley* is distinguishable on the facts. Unlike in *Easley*, there was no break or interruption between Katz's statements that he did not want to talk to the police and Detective Karzin's later statements about the charges, bond, and the investigative efforts to develop physical evidence of fingerprints. This was one continuous conversation, without pause or interruption. Unlike in *Easley*, the incriminating part of the conversation did not involve a different investigator than was part of the original conversation when Katz invoked his right to remain silent. Additionally, Detective Karzin testified at the suppression hearing that he kept talking to Katz after Katz invoked his right to remain silent hoping that he could persuade Katz to cooperate and answer their questions. Tr. at 22-23.

The statements of Detective Karzin and Agent Pessman involve more than a matter-of-fact communication of the evidence against Katz and the potential penalties he faced. Katz was told, in effect, that he could be prosecuted in either state or federal court. He was informed of the amount of bond, the penalties if the case proceeded in either state or federal court, and that the penalties were greater if the prosecution became federal. Although this was the provision of information, considering the totality of the circumstances, there was an implication that Katz would be punished more severely if he persisted in his invocation of the right to silence. The investigators'

5

statements that the case either could remain a state court prosecution or change to a more serious federal prosecution, depending at least in part on Katz's willingness to cooperate, establishes that the investigators' statements were a "compelling influence" or "psychological ploy."

Had the record established that Katz made an arguably incriminating statement after invoking his right to silence only once, followed by the investigators stating matter-of-factly the charges and potential penalties, this Motion to Suppress would be denied. However, the record establishes more than that.

Also, very importantly, unlike any case cited in the briefs and unlike any fact situation experienced in the Court's forty years of involvement in criminal cases, Katz invoked his right to silence four times over a short time period before he made any arguably incriminating statements.  If that is not enough to cause the investigators to scrupulously honor that right, then the Court of Appeals and the Supreme Court need to revisit the proper scope of *Miranda*.

Accordingly, the Court finds that Katz's statements are suppressed because the investigators did not scrupulously honor Katz's invocation of the right to silence prior to Katz making the arguably incriminating statements.

## CONCLUSION

For the reasons set forth herein, the Motion to Suppress Statements is GRANTED.  The statements are suppressed.

ENTERED this 6th day of November, 2007.

                                                 /s/ Michael M. Mihm
                                                 Michael M. Mihm
                                                 United States District Judge